UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*FILED*

*OCT 20  3  31 PH '03*

*U.S. DISTRICT COURT*
*NEW HAVEN, CONN.*

WACHOVIA BANK, N.A., and      :
WACHOVIA MORTGAGE CORPORATION  :
     *Plaintiffs,*              :
                       :

v.                       :     CIVIL NO. 303CV0738(MRK)
                       :

JOHN P. BURKE, in his Official Capacity  :
as Banking Commissioner of the State of  :
Connecticut,                 :
     *Defendant.*            :     OCTOBER 16, 2003

## DEFENDANT'S REPLY MEMORANDUM
## IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN
## OPPOSITION TO THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's order of October 10, 2003, the defendant John P. Burke,

Banking Commissioner of the State of Connecticut (the "Commissioner"), submits this reply

memorandum to the Plaintiffs' Memorandum of Law in Opposition to Defendant's Cross-

Motion for Summary Judgment dated September 25, 2003 ("Plaintiffs' Opp."), the Brief

Amicus Curiae of the New York Clearing House Association LLC in Support of

Plaintiffs' Motion for Summary Judgment dated September 25, 2003 ("NYCH Amicus

Brf."), and Brief of Amicus Curiae American Bankers Association, Consumer Mortgage

Coalition, Consumer Bankers Association, and Electronic Financial Services Council dated

September 25, 2003 ("ABA Amicus Brf.").

The plaintiffs and their supporting amici contend that the National Bank Act precludes the Commissioner from exercising his state law regulatory authority over Wachovia Mortgage because Wachovia Mortgage is a wholly owned operating subsidiary of a national bank.  To reach this result, the plaintiffs and their supporting amici insist that this Court must unquestioningly accept the conclusion of the Office of the Comptroller of the Currency ("OCC") that state law licensing and regulatory authority is preempted as to state-chartered subsidiaries of national banks.

This the Court should not and, under controlling precedent, cannot do.  The simple fact is that the National Bank Act's preemptive reach extends only to national banks, and Wachovia Mortgage is **not** a national bank.  The OCC's interpretive rule, 12 C.F.R. § 7.4006, which disregards the clear limits on the OCC's authority under the National Bank Act, is not entitled to judicial deference.  Accordingly, the plaintiffs' and the OCC's efforts to undermine the Commissioner's lawful authority should be rejected.

## I.      <u>WACHOVIA MORTAGE IS NOT A NATIONAL BANK WITHIN THE MEANING OF § 484 OF THE NATIONAL BANK ACT.</u>

As is usually the case with issues of federal preemption, it is most instructive to return to the actual language that Congress chose to use.  The National Bank Act, in simple and plain language, states that "[n]o *national bank* shall be subject to any visitorial power except as authorized by Federal law. . . ."    12 U.S.C. § 484 (emphasis added).  Congress thus determined that state law visitorial authority over a national bank would be preempted.  The Commissioner, however, does not seek to exercise visitorial authority over a national bank.  Instead, he seeks to exercise his state law authority over a state-chartered corporation – an

2

entity that even the plaintiffs or their supporting amici do not claim has status as a national bank.

By definition, a national bank is an entity that has a charter granted under federal law. *See* 12 U.S.C. §§ 26, 27. Wachovia Mortgage does not have a national charter; it is incorporated under the laws of North Carolina. In this regard, it is no different than the thousands of other corporations doing business in the State of Connecticut that are incorporated under the laws of Connecticut or some other state. It exists as a creature of state law. The National Bank Act's prohibition on the exercise of visitorial powers extends only to a nationally chartered bank, and by its own terms does not encompass state-chartered Wachovia Mortgage.

The plaintiffs attempt to blur the question of a national bank's authority to have operating subsidiaries and the question of the regulatory authority over such operating subsidiaries. *See* Plaintiffs' Opp., at 8. However, that a national bank may have as one of its "incidental" powers under § 24(Seventh) of the National Bank Act the power to use an operating subsidiary in the mortgage lending business does not of itself resolve the issue of preemption. It simply does not follow that, if a national bank has the authority to have a wholly owned subsidiary, the subsidiary is necessarily exempted from state regulation. The question of preemption of state law must be decided separately and with reference to Congress' intent under the National Bank Act. *See Smiley v. Citibank (South Dakota), N.A.,* 517 U.S. 735, 744 (1996).

An examination of the OCC's attempted rationale for preemption exposes its illogic and inconsistency with congressional intent. In adopting § 7.4006 – the regulation that

3

purports to preempt state regulation of operating subsidiaries – the OCC paradoxically concluded that "operating subsidiaries are, in essence, incorporated departments or divisions of the bank. . . ." 66 F.R. 34784, 34788 (July 2, 2001). In other words, in the OCC's eyes, the state-chartered operating subsidiary is not a separate legal entity after all, but a mere department or division of the national bank. This depiction of operating subsidiaries as just another department or division of the bank runs counter to every basic principle of corporation law. It remains a "basic tenet of American corporation law" that a parent and its subsidiary corporations are distinct legal entities. *Dole Food Co. v. Patrickson*, 123 S.Ct. 1655, 1660 (2003); *accord United Bestfoods*, 524 U.S. 51, 61-62 (1988); P. Blumberg, *Law of Corporate Groups*, § 6.01. To overcome this bedrock rule the OCC needs something more than *ipse dixit*.

If the subsidiary is "in essence" a department or division, why then is it separately incorporated under state law? The answer, of course, is that a separate corporate existence is advantageous from a business perspective. As one of the amici observes, using operating subsidiaries for the mortgage lending business protects the national bank's deposit base from exposure to liability arising from mortgage lending activities. ABA Amicus Brf., at 14. Thus, the very reason that a national bank would chose to have an operating subsidiary engaged in mortgage lending is to take advantage of the shielding from liability that comes with the corporate separation inherent in the parent-subsidiary relationship. Without that

4

separateness, the value of having an operating subsidiary involved in mortgage lending would presumably be lost.[1]

The plaintiffs and their supporting amici would have their proverbial cake and eat it too. Certainly, they do not mean to say that operating subsidiaries are in fact mere departments or divisions. If that were so, they would lose the benefits of corporate separateness. Indeed, in testimony presented to Congress in 1999, the OCC emphasized the risk insulation advantages of corporate separateness that were created by subsidiaries of national banks. *See* Brief of Amicus State Officials, at 31. Yet, when it is to their advantage, the plaintiffs and the OCC characterize operating subsidiaries as akin to a department or division, lacking a separate corporate identity. There is no basis in the National Bank Act for picking and choosing the character and effect of an operating subsidiary's status as a state-chartered corporation. If a national bank has the authority as an incidental power to use operating subsidiaries, and thereby to take advantage of the protections from liability that corporate separateness bring, then the separate corporate identity of the operating subsidiary ought to be recognized and not mischaracterized as something else.

The OCC's mischaracterization of operating subsidiaries as divisions or departments has the effect of federalizing the state charters of the operating subsidiaries. By choosing to ignore the corporate separateness of operating subsidiaries, the OCC "in essence" has

---

[1] The ABA amicus, by describing the significant risk transfer and shielding role played by operating subsidiaries, explains why national banks have chosen to incur the substantial costs involved in setting up and maintaining separate state-chartered corporations to carry on a business that could be conducted directly by the parent national banks. State regulators have every reason to be concerned by the potential risks presented by these state-chartered entities to the economies and consumers of their respective states.

transformed a corporation chartered under state law into a mere part of a nationally chartered entity. This transformation simply has no basis in the enactments of Congress.

The plaintiffs contend that the argument that, as state-chartered entities, operating subsidiaries are subject to state regulation proves too much. *See* Plaintiffs' Opp. at 22. The plaintiffs miss the point. The argument is not, as plaintiffs characterize it, that state-chartered corporations are subject to state regulation regardless of a purported conflict with federal law. Rather, the contention is that state-chartered operating subsidiaries are not national banks within the meaning of the National Bank Act. Thus, because the preemption of state visitorial authority extends only to the exercise of such authority over national banks, there is no conflict with federal law.[2] Under 12 U.S.C. § 481, the OCC may examine affiliates (including operating subsidiaries) of national banks. However, Congress has **not** given the OCC exclusive visitorial powers over such affiliates. The plaintiffs have not even attempted to explain the clear distinction between the OCC's visitorial powers over national banks under § 484 and the OCC's more restricted examination authority over affiliates and operating subsidiaries under § 481.

State-chartered corporations are not national banks, and nothing in the National Bank Act preempts states from exercising their traditional authority over state-chartered entities. Moreover, it matters not, as the plaintiffs and their amici speciously argue, that Wachovia

---

[2] Even in the case of national banks, the Supreme Court has definitively established that state officials have full authority to bring judicial proceedings to enforce valid state laws against such banks. *First Nat'l Bank in St. Louis v. Missouri*, 263 U.S. 640, 659-61 (1924). Despite the plaintiffs' suggestions to the contrary, *see* Plaintiffs' Opp., at 18-19 n.11, the holding in *First Nat'l Bank in St. Louis* regarding the judicial enforcement authority of state officials remains good law. *See, e.g., Brown v. Clarke*, 878 F.2d 627 (2d Cir. 1989); *First Union Nat'l Bank v. Burke*, 48 F. Supp. 2d 132, 145, 148-49 (D. Conn. 1999).

Mortgage is incorporated under North Carolina, rather than Connecticut law. Plaintiffs' Opp, at 22; NYCH Amicus Brf., at 17-18. This argument would have the absurd result that every state except North Carolina would be preempted. The traditional authority of the states over state-chartered corporations extends to domestic and out-of-state corporations alike. *See Union Brokerage Co. v. Jensen,* 322 U.S. 202 (1944).

In sum, the National Bank Act's plain language does not authorize the OCC to extend the preemptive scope of the Act to state-chartered operating subsidiaries by ignoring, for the purposes of preemption only, their separate corporate identity.

## II.     THE OCC'S VIEW OF PREEMPTION IS NOT ENTITLED TO DEFERENCE.

The plaintiffs contend that the "operative test" for the legal issues presented by this case is whether the OCC has acted within the scope of its congressionally delegated authority. Plaintiffs' Opp., at 4. However, the plaintiffs' argument is not that simple. Rather, they declare that this Court must effectively decline to exercise its judicial function and that it must acquiesce in the OCC's aggressive interpretation of its powers to preempt state law. In other words, according to the plaintiffs and their supporting amici, this Court must conclude that state law authority over operating subsidiaries is preempted because the OCC says so. Such blind deference is simply unjustified in this instance.

The plaintiffs and their supporting amici chant the mantra of deference to the OCC's interpretation as reflected in 12 C.F.R. § 7.4006. There are several compelling reasons why this Court should not join in that chant. First, the essential predicate for *Chevron* deference is not satisfied. Under *Chevron,* a court does not defer an agency's interpretation if the intent of Congress is clear from the statutory language itself. *Independent Ins. Agents of America, Inc.*

7

*v. Hawke*, 211 F.3d 638, 643-45 (D.C. Cir. 2000); *American Land Title Ass'n v. Clarke*, 968 F.2d 150, 154-55 (2d Cir. 1992), *cert. denied*, 508 U.S. 971 (1993). As demonstrated above and in the Commissioner's main brief, *see* Def. Main Brf., at 8-12, the statutory analysis of the relevant provisions of the National Bank Act – including in particular §§ 221, 221a, 481 and 484 – makes plain that Wachovia Mortgage, as a state-chartered operating subsidiary, is not a national bank to which § 484's preemption of visitorial authority extends. Rather than grapple with the plain meaning of the statutory language, the plaintiffs and their amici rely on the deference principle. The Court need not even reach the question of deference, however, given the clear evidence of congressional intent evident in the statutory language.

Second, the plaintiffs and the supporting amici wrongly rely on case law, principally *Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141 (1982), for the proposition that § 7.4006 itself has preemptive force. Plaintiffs' Opp. at 4; NYCH Amicus Brf., at 12. Yet the plaintiffs and their amici simply fail to come to grips with the OCC's own statements about § 7.4006. In promulgating that regulation, which purports to extend preemption of state law to operating subsidiaries, the OCC stated that the regulation "itself does not effect preemption of any State law; it reflects the conclusion we believe that a Federal court would reach, even in the absence of the regulation, pursuant to the Supremacy Clause and applicable Federal judicial precedent." 66 Fed. Reg. 34784, 34790 (July 2, 2001).

In this unequivocal statement, the OCC disavowed any preemptive effect of the regulation. Rather, the regulation is little more than OCC's view of what a court would hold. The courts are not required to defer to an agency's interpretation of *judicial* decisions. *New York, New York, LLC v. NLRB*, 313 F.3d 585, 590 (D.C. Cir. 2002). "'There is therefore no

8

reason for courts – the supposed experts in analyzing judicial decisions – to defer to agency interpretations.'" *University of Great Falls v. NLRB*, 278 F.3d 1335, 1341 (D.C. Cir. 2002) (quoting *Akins v. FEC*, 101 F.3d 731, 740 (D.C. Cir. 1996), *vacated on other grounds*, 524 U.S. 11 (1998)). This is not, therefore, an instance of the sort described in *Fidelity Federal* and its progeny where a regulation itself preempts state authority. Moreover, merely because the OCC chose to put in a regulation its view of what a federal court might do when presented with the issue does not entitle the regulation to *Chevron* deference.

Finally, as discussed more fully in the Commissioner's main brief, *see* Def. Brf., at 14-18, even if the Court concludes that the first requirement of the *Chevron* analysis is satisfied, the OCC's interpretation of the National Bank Act's provisions is not reasonable and is not a result that Congress intended. *See Independent Ins. Agents*, 211 F.3d at 643-45; *American Land Title*, 968 F.2d at 157. The OCC's interpretation does not represent a reasonable weighing of competing policy concerns that Congress left to the agency to resolve. Instead, it represents a naked assault on the traditional authority of states to regulate state-chartered mortgage lenders.

The plaintiffs and their amici emphasize that the OCC's regulation that permits national banks to have operating subsidiaries (12 C.F.R. § 5.34) was adopted over thirty years ago. *See* Plaintiffs' Opp. at 9; NYCH Amicus Brf., at 6. What is more instructive for the purposes of this case is that § 7.4006 was adopted only two years ago. 66 F.R. 34784 (July 2, 2001). Thus, this does not represent, as the plaintiffs would imply, a longstanding rule. To the contrary, it is part of a new effort by the OCC and its regulated constituency to deprive the states of their long-established authority to regulate state-chartered mortgage lenders.

This effort should not be left to the sort of cursory, deferential review that the plaintiffs and their amici urge on the Court.  Instead, the Court must evaluate for itself the scope of the National Bank Act's preemption of state law.  Once it does so, it will conclude that the OCC's efforts are misguided and contrary to the expressed intent of Congress.[3]

## III.     CONCLUSION

For the foregoing reasons and the reasons set forth in the Commissioner's main brief, the Court should grant the Commissioner's cross-motion for summary judgment, deny the plaintiffs' motion for summary judgment, and enter a judgment of dismissal in favor of the Commissioner.

DEFENDANT,
JOHN P. BURKE, in his official
capacity as Banking Commissioner
of the State of Connecticut

RICHARD BLUMENTHAL
ATTORNEY GENERAL

Mark F. Kohler (#ct02272)
Assistant Attorney General
Rupal Shah Palanki (#ct21406)
Assistant Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT 06106
(860) 808-5270
(860) 808-5385 *fax*
mark.kohler@po.state.ct.us

---

[3] As to the question of § 1983 relief, the Commissioner relies on the discussion set forth in his main brief, at 18-20.

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed on this 16th day of October, 2003, by first class mail to all counsel and pro se parties as follows:

Daniel L. FitzMaurice
Jason S. Weathers
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499

Douglas B. Jordan
Office of the Comptroller of the
Currency
250 East Street, SW
Washington, D.C. 20219

Margaret E. Haering
Hurwitz & Sagarin
147 North Broad Street
P.O. Box 112
Milford, CT 06460-0112

Arthur E. Wilmarth, Jr.
George Washington University Law
School
720 Twentieth Street, NW
Washington, D.C. 20052

Eric P. Smith
Lynch, Traub, Keefe & Errante, P.C.
52 Trumbull St.
New Haven, CT 06510

Jeremiah S. Buckley
Joseph M. Kolar
Goodwin & Proctor, LLP
1717 Pennsylvania Avenue, NW
Suite 500
Washington, D.C. 20006

John W. Cannavino
Robert J. Sickinger
Cummings & Lockwood LLC
Four Stamford Plaza
107 Elm Street
Stamford, CT 06902

H. Rodgin Cohen
Michael M. Wiseman
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498

Mark F. Kohler
Assistant Attorney General

11