UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WACHOVIA BANK, N.A. and WACHOVIA MORTGAGE CORPORATION,<br><br>Plaintiffs,<br><br>V.<br><br>JOHN P. BURKE, in his official capacity as Banking Commissioner of the State of Connecticut,<br><br>Defendant. | : | Civ. Action No. 3:03 CV 0738 (JCH)<br><br><br><br><br><br><br><br>August 26, 2003 |

FILED
OCT 24 2 03 PM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN

**BRIEF OF *AMICI CURIAE*, STATES AND STATE BANKING OFFICIALS IN SUPPORT OF DEFENDANT JOHN P. BURKE, BANKING COMMISSIONER**

Margaret E. Haering CT10818
Hurwitz & Sagarin, LLC
147 North Broad Street
Milford, CT 06460
Telephone: (203) 877-8000
Facsimile: (203) 878-9800

Of Counsel:
Arthur E. Wilmarth, Jr.
D.C. Bar No. 225474
Professor of Law
George Washington University Law School
720 - 20th Street, N.W.
Washington, DC 20052
Telephone: (202) 994-6386
Fax: (202) 994-9446

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTEREST OF AMICI .......... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 2

ARGUMENT .......... 5

A. The Sweeping Theory of Preemption Advanced by Plaintiffs Is Contrary to Controlling Judicial Authorities and Congressional Intent .......... 5

B. Federal Statutes Do Not Immunize Plaintiffs from State Regulation .......... 13

1. Section 484 Does Not Preempt the States' Authority to Enforce State Laws Against National Banks and Their Operating Subsidiaries .......... 14

a. Section 484 Permits State Officials to Sue in Federal and State Courts to Enforce State Laws Against National Banks .......... 14

b. Section 484 Does Not Limit the States' Authority to Regulate Operating Subsidiaries of National Banks .......... 16

2. Sections 24 (Seventh) and 24a Do Not Preempt the Authority of States to Regulate Operating Subsidiaries of National Banks .......... 22

C. The OCC's Interpretive Rulings Are Not Entitled to Judicial Deference and Therefore Do Not Exempt Operating Subsidiaries from State Regulation .......... 25

1. The OCC's Rulings Are Contrary to Clearly Manifested Congressional Intent .......... 25

2. The OCC's Claim of Preemption Violates Core Principles of Corporate Governance and Invades the Sovereign Power of the States to Regulate State-Chartered Corporations .......... 30

CONCLUSION .......... 34

# TABLE OF AUTHORITIES

## CASES

American Land Title Ass'n v. Clarke,
968 F.2d 150 (2d Cir. 1992), cert. denied, 508 U.S. 971 (1993) ....................................23

Anderson Nat'l Bank v. Luckett,
321 U.S. 233 (1944..................................................................................................7

Atherton v. FDIC,
519 U.S. 213 (1997) ..........................................................................................5, 6, 9

Bank of America v. City and County of San Francisco,
309 F.3d 551 (9th Cir. 2002), cert. denied, 123 S. Ct. 2220 (2003) ............................9, 30

Bank of Bethel v. Pahquioque Bank,
81 U.S. (14 Wall.) 383 (1871).....................................................................................15

Barnett Bank of Marion County, N.A. v. Nelson,
517 U.S. 25 (1996) .......................................................................................................6

Beneficial National Bank v. Anderson,
123 S. Ct. 2058 ...........................................................................................................5

Best v. U.S. National Bank,
39 P.2d 554 (Ore. 1987) .......................................................................................7, 15

Black v. Financial Freedom Senior Funding Corp.,
112 Cal. Rptr. 2d 445 (Cal. App. 2001) ....................................................................13

Business Roundtable v. SEC,
990 F.2d 406 (D.C. Cir. 1990) .............................................................................11, 31

CTS Corp. v. Dynamics Corp. of America,
481 U.S. 69 (1987) .......................................................................................10, 31, 33

Cipollone v. Liggett Group, Inc.,
505 U.S. 504, 516-18 (1992)......................................................................................9

FDA v. Brown & Williamson Tobacco Corp.,
529 U.S. 120, 132 (2000) ..........................................................................................28

First National Bank in St. Louis v. Missouri,
263 U.S. 640 (1924) ....7

First National Bank of Logan v. Walker Bank & Trust Co.,
385 U.S. 252 (1966) ....15

First National Bank v. Hughes,
6 Fed. 737, 740-43 (C.C.N.D. Ohio1881) (subpoena),
*appeal dism'd,* 106 U.S. 523 (1883) ....15

First Union National Bank v Burke,.
48 F. Supp. 2d 132 (D. Conn. 1999) ....15

Glukowsky v. Equity One, Inc.,
821 A.2d 485, (N.J. Super. App. Div. 2003) ....13

In re Maxwell,
281 B.R. 101, 123-31 (Bankr. D. Mass. 2002) ....12

Independent Ins. Agents of America, Inc. v. Hawke,
211 F.3d 638 (D.C. Cir. 2000) ....18

Lewis v. BT Investment Managers, Inc.,
447 U.S. 27 (1980) ....11, 12

Lewis v. Fidelity & Deposit Co.,
292 U.S. 559 (1934) ....7

McClellan v. Chipman,
164 U.S. 347 (1896) ....7, 9

Medtronic, Inc. v. Lohr,
518 U.S. 470, 475, 484-85 (1996) ....9

Minnesota v. Fleet Mortgage Corp.,
81 F. Supp. 2d 995 (D. Minn. 2001) ....20

N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,
514 U.S. 645 (1995) ....9

National Bank v. Commonwealth,
76 U.S (9 Wall.) 353 (1870) ....6

Nat'l Home Equity Mortgage Ass'n v. Office of Thrift Supervision,
2003 WL 21663983 (D.D.C. July 14, 2003) ....13, 19, 20

National State Bank v. Long,
630 F.2d 981 (3d Cir. 1980) ....7

Northeast Bancorp v. Board of Governors,
472 U.S. 159 (1985) ....11

Old Stone Bank v. Michaelson,
439 F. Supp. 252 (D.R.I. 1977) ....11

Oregon Railway & Navigation Co. v. Oregonian Railway Co.,
130 U.S. 1 (1889) ....10

Peatros v. Bank of America NT&SA,
90 P.2d 539 (Cal. 2000) ....6

Perdue v. Crocker National Bank,
702 P.2d 503 (Cal. 1985), appeal dism'd, 475 U.S. 1001 (1986) ....7, 8, 15, 23, 27

Santa Fe Industries, Inc. v. Green,
430 U.S. 462 (1977) ....11

Solid Waste Agency of Northern Cook County v. U.S. Army Corp. of Engineers,
531 U.S. 159 (2001) ....33

Solomon v. Gilmore,
31 A.2d 280 (Conn. 1999) ....1, 12

ULLICO, Inc. v. Black,
536 U.S. 959 (2002) ....13

Union Brokerage Co. v. Jensen,
322 U.S. 202 (1944) ....10

United Companies Lending Corp. v. Sargeant,
20 F. Supp. 2d 192 (D. Mass. 1998) ....12

United States v. Bestfoods,

    24 U.S. 51 (1998) ....................30, 31

United States v. Locke,
29 U.S. 89 (2000) ....................9

Video Trax, Inc. v. NationsBank, N.A.,
33 F. Supp. 2d 1041 (S.D. Fla. 1998), aff'd, 205 F.2d 1358 (11th Cir.) (per curiam), cert. denied, 531 U.S. 822 (2000) ....................7, 8, 23

**STATUTES**

Alternative Mortgage Transaction Parity Act, 12 U.S.C. § 3801 et seq. ..........12, 13, 19, 20, 21, 28

Gramm-Leach-Bliley Act ("GLBA"),
113 Stat. 1383 (reprinted in 15 U.S.C.A. §41) ....................21

Riegle-Neal Interstate Banking and Branching Efficiency Act of 1994,
Pub. L. No. 103-328, 108 Stat. 2338 ....................7, 8

12 U.S.C. § 21 ....................16

12 U.S.C. §24 ....................16, 23

12 U.S.C. § 24a ....................24

12 U.S.C. § 24(Seventh) ....................22

12 U.S.C. §26 ....................16

12 U.S.C. §27 ....................16

12 U.S.C. § 36 ....................8

12 U.S.C. § 92 ....................23

12 U.S.C. § 221 ....................16, 21, 28

12 U.S.C. § 221a ....................16, 21, 28

12 U.S.C. § 371c ....................18, 23, 28, 29

12 U.S.C. § 481 ....................17, 28

12 U.S.C. § 484 ....................4, 13, 14, 15, 16, 17, 18, 22, 28

12 U.S.C. § 1813 ....................21, 22

12 U.S.C. §1818(a) ....................14

12 U.S.C. § 1820 ....................14, 26

12 U.S.C. § 1831 ....................26

12 U.S.C. § 1846 ....................12

12 U.S.C. § 1861 ....................23

12 U.S.C. § 1867 ....................23

12 U.S.C. § 3801(a)(3) ....................12, 19

12 U.S.C. § 3802(1) ....................13, 20

Conn. Gen. Stat. § 36a-486 ....................1

Cnn. Gen. Stat. §36a-511 ....................1

Conn. Gen. Stat. § 36a-684 ....................1

LEGISLATIVE MATERIALS

H.R. Rep. No. 103-651 (Conf. Rep.) (1994), reprinted in 1994 U.S. Code Cong. & Ad. News 2068 ....................7

H.R. Rep. No. 106-74, at 101 (1999) (pt. 1) ....................31

H.R. Rep. No. 106-434, at 160 (1999) (Conf. Rep.), reprinted in 1999 U.S. Code Cong. & Ad. News 245 ....................25

ADMINISTRATIVE & EXECUTIVE MATERIALS

65 Fed. Reg. 3157, 3160 (Jan. 20, 2000) ....................25

66 Fed. Reg. 34784, 34790 (July 2, 2001) ....................26

12 C.F.R. § 5.234 ....................17

12 C.F.R. § 5.34 .......... 24, 25, 32

12 C.F.R. §7.4000 .......... 25

12 C.F.R. §7.4006 .......... 25

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WACHOVIA BANK, N.A. and WACHOVIA MORTGAGE CORPORATION,<br><br>Plaintiffs,<br><br>V.<br><br>JOHN P. BURKE, in his official capacity as Banking Commissioner of the State of Connecticut,<br><br>Defendant. | : | Civ. Action No.<br>3:03 CV 0738 (JCH)<br><br><br><br><br><br><br><br>August 26, 2003 |

**BRIEF OF *AMICI CURIAE*, STATES AND STATE BANKING OFFICIALS IN SUPPORT OF DEFENDANT JOHN P. BURKE, BANKING COMMISSIONER**

**INTEREST OF AMICI**

*Amici,* representing 43 states, the District of Columbia, and the Commonwealth of Puerto Rico, administer or enforce state laws regulating mortgage lenders and other providers of financial services. *Amici* respectfully submit this brief in support of Defendant John P. Burke, Banking Commissioner of the State of Connecticut (the "Commissioner"). Connecticut statutes, including Conn. Gen. Stat. §§ 36a-486 & 36a-511, establish a "comprehensive scheme" authorizing the Commissioner to license and regulate nonbank mortgage lenders for the purpose of "protect[ing] consumers" from "unscrupulous lending practices." *Solomon v. Gilmore,* 731 A.2d 280, 284 (Conn. 1999). Plaintiffs, however, assert that federal law preempts the Commissioner's authority to license and regulate state-chartered nonbank mortgage lenders that are operating subsidiaries of national banks.

Plaintiffs' lawsuit raises an issue of great national significance. As shown below, plaintiffs seek to "federalize" state-chartered corporations that are controlled by national banks, thereby removing those companies from state oversight.[1] Such an outcome would severely undermine the long-established authority of each state to license and regulate state-chartered providers of financial services transacting business within its borders. *Amici* urge this Court to reject Plaintiffs' preemption claim, because it would destroy fundamental policies of federalism that Congress and the courts have upheld as essential aspects of our systems of financial regulation and corporate governance.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Wachovia Mortgage Corporation ("Wachovia Mortgage") is a state-chartered nonbank corporation, organized under North Carolina law, which makes mortgage loans to residents of Connecticut and other states. Prior to January 1, 2003, Wachovia Mortgage was a wholly-owned subsidiary of Wachovia Corporation, a financial holding company, which also owns Plaintiff Wachovia Bank, N.A. ("Wachovia Bank"). During the same time period, Wachovia Mortgage obtained licenses from the Commissioner and recognized its legal duty to comply with Connecticut's regulatory scheme for nonbank mortgage lenders. The Commissioner performed an examination of Wachovia Mortgage on December 16, 2002, pursuant to Conn.

[1] Under regulations adopted by the Office of the Comptroller of the Currency ("OCC"), a subsidiary of a national bank qualifies as an "operating subsidiary" if (i) the subsidiary engages in "activities that are permissible for a national bank to engage in directly either as part of, or incidental to, the business of banking," and (ii) the parent bank "controls" the subsidiary (usually by owning more than 50% of the subsidiary's voting stock). 12 C.F.R. § 5.34(e)(1) & (2).

Gen. Stat. § 36a-684. Four days later, Wachovia Mortgage notified the Commissioner that it would become a direct, wholly-owned subsidiary of Wachovia Bank on January 1, 2003. Based on its new status as an operating subsidiary of a national bank, Wachovia Mortgage claimed that it was no longer required to maintain a license or otherwise comply with Connecticut's regulatory requirements for nonbank mortgage lenders. That claim led to the present litigation between Plaintiffs and the Commissioner.[2]

Plaintiffs assert that "the statutory regime that the Commissioner seeks to impose on Wachovia is *clearly and fully preempted* by federal law applied to national banks and their operating subsidiaries." Pltf. Mem. 7 (emphasis added). Relying on interpretive rulings issued by the OCC, Plaintiffs allege that Wachovia Mortgage has authority to conduct business in Connecticut "free from any state licensure requirement or state regulatory authority." Id. at 14-15 (citing OCC Interpretive Letters 957 & 958, each dated Jan. 27, 2003). According to Plaintiffs, the OCC's "*exclusive* regulatory and visitorial powers" over operating subsidiaries of national banks preclude all state oversight of Wachovia Mortgage. Pltf. Mem. 18 (emphasis added).

Plaintiffs' blanket preemption theory must be rejected, because it conflicts with core principles of federalism that Congress and the courts have upheld in the fields of financial regulation and corporate governance. Plaintiffs' assumption that national banks enjoy a general exemption from state laws is contrary to the well-established axiom that state laws *do* apply to the activities of national banks in the absence of a direct conflict with a federal statute or an

---

[2] See Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment ("Pltf. Mem."), at 1-4; Exhibit A to Affidavit of Daniel L. Fitzmaurice.

authorized federal agency regulation. Plaintiffs' assertion that state-chartered operating subsidiaries possess a blanket immunity from state regulation is even more indefensible. Under our system of corporate governance, each state has the unquestioned authority (i) to exercise comprehensive supervision over the corporations it charters, and (ii) to license and regulate corporations chartered by other states that transact business within its borders. In addition, the courts have repeatedly upheld the authority of states to regulate state-chartered providers of financial services, particularly in the field of mortgage lending.

None of the statutes cited by Plaintiffs supports their preemption claim. Plaintiffs rely most heavily on 12 U.S.C. § 484, which limits the exercise of "visitorial powers" over national banks. However, Section 484(a) expressly recognizes the authority of "courts of justice" to exercise "visitorial powers" over national banks. Accordingly, Section 484 permits state officials to sue in federal or state courts to enforce state laws against national banks. In addition, the terms of Section 484 and several other federal statutes make clear that (i) Section 484 applies *only* to national banks, and (ii) the limitation on "visitorial powers" under Section 484 does *not* extend to "affiliates" of national banks. Accordingly, Section 484 does *not* restrict the authority of state officials to license and regulate state-chartered nonbank corporations that are operating subsidiaries of national banks.

For two reasons, the OCC's interpretive rulings are not entitled to judicial deference and, therefore, do not provide a valid basis for Plaintiffs' preemption claim. First, the OCC's opinions conflict with the manifest intent of Congress to (1) draw a sharp distinction between national banks and their "affiliates," and (2) preserve the states' primary role in regulating state-chartered

providers of financial services, including mortgage lenders. Second, the OCC's rulings raise serious constitutional questions under the Tenth Amendment, because they invade the states' sovereign authority to define and enforce corporate governance rules for state-chartered business entities.

## ARGUMENT

### A. The Sweeping Theory of Preemption Advanced by Plaintiffs Is Contrary to Controlling Judicial Authorities and Congressional Intent

In claiming that operating subsidiaries are immune from state regulation, Plaintiffs rely on the premise that national banks enjoy a general exemption from state laws. See Pltf. Mem. 8-10. That premise is clearly erroneous, because it violates a fundamental tenet of our dual banking system. Under that system, the states have authority to regulate the business activities of *all* banks, including national banks, *except* in specific areas where Congress has affirmatively chosen to preempt state laws.[3] In 1997, the Supreme Court reaffirmed the principle that "federally chartered banks are subject to state law." *Atherton v. FDIC,* 519 U.S. 213, 222 (1997). In reiterating that axiom, the Court cited prior decisions reaching back more than a century, including an 1870 case where the Court declared that national banks

---

[3] For example, in *Beneficial National Bank v. Anderson,* 123 S. Ct. 2058 (2003), the Supreme Court held that Sections 85 and 86 of the National Bank Act provide "an *exclusive* federal cause of action for usury against national banks," and, therefore, "there is . . . no such thing as a state-law claim of usury against a national bank." Id. at 2064 (emphasis added). Thus, usury is a *specific* area where Congress has determined that state-law rules should *not* apply to national banks. As shown in Part B, below, Congress has *not* manifested any similar intent to preempt the states' authority to regulate state-chartered nonbank corporations that are operating subsidiaries of national banks.